## HOLLEY CARBURETOR CO. v. UNITED STATES.

### No. F–338.

Court of Claims.

May 2, 1932.

ly computed by the Commissioner of Internal Revenue, was $27,580.84. Taxes paid by plaintiff in excess of that amount have been credited and refunded by the commissioner and are not involved in this suit. A timely claim for refund of the taxes paid having been filed and rejected, the plaintiff brings this suit to recover the same with interest thereon.

The plaintiff bases its right to recover on the provisions of section 234(a) (14) of the Revenue Act of 1918 (40 Stat. 1077, 1079).[3] It is claimed: (1) That the plaintiff sustained a deductible loss of $17,369.78 resulting from a material reduction of the value of its December 31, 1918, inventory which was liquidated in 1919; (2) that it sustained a deductible loss of $43,012.46 from the actual payment of rebates, subsequent to the close of the taxable year 1918, in pursuance of contracts entered into during the taxable year 1918 upon sales made during such year.

Inventory losses under section 234 (a) (14) are allowable where (a) goods included

R. M. O'Hara, of Washington, D. C. (Norman B. Landreau, of Washington, D. C., on the brief), for plaintiff.

R. C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

## WILLIAMS, Judge.

The plaintiff in the year 1918 was engaged in the business of the manufacture and sale of certain automobile parts and accessories. Its income tax liability for the year, as final-

in an inventory at the end of the taxable year 1918 have been sold at a loss during the succeeding taxable year, or (b) such goods re-

---

[3] "(a) At the time of filing return for the taxable year 1918 a taxpayer may file a claim in abatement based on the fact that he has sustained a substantial loss (whether or not actually realized by sale or other disposition) resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for such taxable year, or from the actual payment after the close of such taxable year of rebates in pursuance of contracts entered into during such year upon sales made during such year. * * * (b) If no such claim is filed, but it is shown to the satisfaction of the Commissioner that during the taxable year 1919 the taxpayer has sustained a substantial loss of the character above

main unsold throughout the taxable year 1919 and at its close have a then market value (not resulting from a temporary fluctuation) materially below the value at which they were inventoried at the end of the taxable year.[4]

The plaintiff's inventory of December 31, 1918, taken by departments of the business, at cost or market whichever is lower, was $101,597.06. The entire inventory was disposed of during the year 1919, goods of an inventory value of $74,996.98 being sold in the regular course of business for the sum of $133,646.82, the remainder of an inventory value of $26,600.48 being sold as scrap for $1,331.08. The total amount received by the plaintiff from the sale of goods included in the inventory was $33,380.84 in excess of their inventory value.

It is not contended the goods comprising plaintiff's December 31, 1918, inventory brought less than their inventory value when sold in 1919. It is claimed, however, that because of the selling expenses attributable to the goods the plaintiff sustained a loss of $17,369.78 in the liquidation of the inventory, and that this is a deductible inventory loss under section 234 (a) (14) of the 1918 act.

The plaintiff has apportioned its overhead and other expenses of operating and maintaining its business during the year 1919 in proportion to the gross sales figures, and has allocated to the goods included in its 1918 closing inventory, as sales expenses, such items of expense as official salaries, royalties, labor, building and fixtures maintenance, heat, light, and power, fire and liability insurance, taxes, watchmen and janitors, administration, depreciation on buildings and fixtures, superintendence, perishable tools, rent, etc. It is claimed these are reasonable selling expenses which plaintiff is entitled to deduct from the amount received from sale of the goods in determining whether or not it sustained an allowable inventory loss under section 234 (a) (14). It is only by charging these items against the inventoried value of the goods, as sales expenses, that the plaintiff is able to show a loss resulting from the sale of the goods, as the sales price largely exceeds the inventory value.

Section 234 (a) (14) does not contemplate or authorize an inventory loss where

goods included in a closing inventory for the year 1918 are sold during 1919 at a price in excess of their inventory value. The loss sustained by a taxpayer must result from a material reduction in the value of the inventory. It cannot be said there has been a material reduction in the value of an inventory where goods sell at a price in excess of the inventory value. An allowable inventory loss under section 234 (a) (14) is the amount which the inventory value of the goods sold exceeds their actual selling price minus a reasonable allowance for selling expenses, if any, incurred in the taxable year 1919, and attributable to such goods.[5] The selling expenses must relate directly to the goods sold and are not such as are necessary in the maintenance and conduct of the business generally. The purpose of the statute was to afford relief to taxpayers growing out of the deflation of values following the termination of the World War. It was recognized that where taxable income was determined for the year 1918 by the use of inventories, such income would not be realized by the taxpayer if thereafter goods were sold at prices lower than those prevailing at the close of that year—hence it was provided that a taxpayer who has sustained a substantial loss resulting from any material reduction in the value of his 1918 inventory during the year 1919 might have such loss deducted from his net income for the taxable year 1918. The loss must result from a material reduction in the value of the inventory—not from the costs incurred in its liquidation. The plaintiff in this case has not sustained such a loss, and its claim that it sustained an inventory loss of $17,369.78 under section 234 (a) (14) of the Revenue Act of 1918 for the year 1918 is without merit.

During the year 1918 the plaintiff sold certain of its goods to the California Sales Company in the amount of $20,184; to the Coon, McGraw Company in the amount of $32,780; and to the Detroit Motor Products Company in the sum of $16,434. The plaintiff sold these goods on the representation that they were free from material and mechanical defects and guaranteed a refund of the purchase price in case the goods were not as represented. The goods did not prove

---

described then the amount of such loss shall be deducted from the net income for the taxable year 1918 and the taxes imposed by this title and by Title III for such year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

[4] Article 263, Regulation 45, under the Revenue Act of 1918.

[5] Art. 264. Treasury Regulation 45, Revenue Act 1918: "Art. 264. Loss where goods have been sold.—Where goods included in the inventory at the end of the taxable year 1918 have been sold during the succeeding taxable year, the loss which may be deducted from net income for the taxable year 1918 is the amount by which the value at which the goods sold were included in the inventory exceeds the actual selling price minus a reasonable allowance for selling expenses and for manufacturing expenses, if any, incurred in the taxable year 1919 and attributable to such goods."

satisfactory to these purchasers and in 1919 the California Sales Company made a claim against the plaintiff under the guarantee, and the plaintiff refunded $11,867.50 to that company. Suits were instituted against the plaintiff by Coon, McGraw Company and by the Detroit Motor Products Company in 1919. These suits were subsequently settled by payment by the plaintiff to Coon, McGraw Company of $21,829.50 on October 29, 1920, and by the payment to the Detroit Motor Products Company of $9,315.46 on January 16, 1923. The goods were returned to the plaintiff by each of the companies upon the payments to them of amounts aforesaid.

The plaintiff contends these payments amounting to $43,012.46 represent rebates within the meaning of section 234 (a) (14) of the 1918 act, and that the amount so paid is properly deductible from plaintiff's income for the year 1918.

The term "rebates," as used in section 234 (a) (14), is defined in Dewey Portland Cement Co. v. Crooks (D. C.) 42 F.(2d) 251, 253: " * * * It appears that it is essential to the idea of a rebate that upon a sale of goods or services something be returned to the purchaser out of the purchase price for the purpose of accomplishing a reduction in the purchase price. There is every reason to believe that this general definition is the one intended by the Congress for the word 'rebates' as used in section 234 (a) (14). That is clearly indicated by the legislative history of the section."

In Henningsen Produce Co. v. Commissioner, 59 App. D. C. 191, 37 F.(2d) 821, 822, the court said:

"It is apparent from an examination of the provisions of section 234 (a) (14) (a) that its purpose was to protect taxpayers from abnormal conditions resulting from the World War and its termination. It was recognized that the market value of the inventories of many taxpayers would be likely to be lower because of the termination of the war. * * * When the taxpayer had made a sale in 1918 of goods inventoried in that year, under an agreement requiring the taxpayer to allow a rebate to the purchaser in the event of material reduction in the value of the goods sold, the taxpayer was authorized, under the alternative provision of the section, to a deduction as of 1918.

"In other words, as found by the Commissioner and the Board of Tax Appeals, this provision for rebate must be read in connection with the context; and, when so read, it is apparent that it was meant to cover losses similar in character to those allowed on account of depreciated inventories."

The payments which the plaintiff claims were rebates were made to dissatisfied customers in the settlement of claims growing out of its contract of warranty of the goods sold to them, and were not payments made in pursuance of contracts entered into at the time of the sales requiring the plaintiff to allow rebates in the event of a reduction in the value of the goods sold. The distinction between a contract entered into at the time of the sale of goods, wherein the seller agrees in the event of certain contingencies to rebate to the purchaser a part of the purchase price, and the contract of guaranty in this case, in which the plaintiff agreed to refund to purchasers the entire purchase price in case the goods sold were not found to be as represented, is too obvious to require discussion. The idea of a rebate is the return to a purchaser of goods of a part of the purchase price, and implies the retention of the goods by the purchaser. The contract of warranty here provides for the return of the entire purchase price if the goods are not satisfactory, and apparently contemplates the return of the goods to the plaintiff. The payments in question were not in any sense rebates within the meaning of section 234 (a) (14) of the Revenue Act of 1918, and the plaintiff is not entitled to the relief sought.

It is ordered that the petition be dismissed.